IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————————

| | |
|---|---|
| BOB and KAREN ELLENBERG, as parents and next friends of S.E., a minor,<br><br>        Plaintiffs,<br><br>vs.<br><br>NEW MEXICO MILITARY INSTITUTE, and the BOARD OF REGENTS of the NEW MEXICO MILITARY INSTITUTE,<br><br>        Defendants. | No. 04cv0347 PK/DJS |

———————————————

MEMORANDUM OPINION AND ORDER

———————————————

THIS MATTER comes on for review of the administrative record

concerning Plaintiffs' Individuals with Disabilities Education Act ("IDEA")[1]

claim.  Upon consideration thereof,

(1) <u>Procedural Posture.</u>  Plaintiffs ("Parents") brought this complaint for

damages, injunctive and declaratory relief after their child, S.E. ("Student"), was

denied admission to the New Mexico Military Institute ("NMMI").  Parents claim

that Defendants, NMMI and its Regents, have violated: (1) the IDEA by depriving

---

[1]  Congress recently amended the IDEA.  <u>See</u> Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647.  Thus, the citations are to the Act as amended in 2004, unless otherwise indicated.

Student of a free appropriate public education ("FAPE") in the least restrictive environment;  (2) the Rehabilitation Act ("RA"); and (3) the Americans with Disabilities Act ("ADA").  Doc. 1 at 7.[2]  At a status conference before this court, the parties agreed that the legal issues associated with the IDEA claim should be considered first after briefing.  Doc. 12.  Plaintiffs suggest that in considering whether the IDEA applies to NMMI in these circumstances, there can be no reliance on the evidence developed in the merits hearing.  See Doc. 15 at 1-2, 9. That is simply too narrow a reading of the stipulated order.

This court's jurisdiction over the IDEA claim arises under 20 U.S.C. §§ 1415(i)(2)-(3), which provide that a party aggrieved with respect to the administrative findings and decision has the right to bring a civil action in federal court without regard to the amount in controversy.  The court has reviewed the entire administrative record and the parties' submissions and concludes that Parents cannot prevail on their IDEA claim, thus it is unnecessary to hear additional evidence on the appropriate placement of Student pursuant to the IDEA, 20 U.S.C. § 1415(i)(2)(B)(ii).  See Doc. 13 at 3-4.  The court also

---

[2]  The parties have numbered most of the record proper for ease of reference in this proceeding–thus, a sticker "CIV 04-347 Page __" appears on each page and the court will reference those pages with R. at __.  Those items not so numbered (transcripts, petitioners' exhibits, and respondents' exhibits for the due process hearings are numbered as Tr. (hearing date) __, Pet. Ex. __ , and Resp. Ex. __,  respectively.  References to pleadings in the district court case file are identified by pleading number, i.e., Doc. __.

concludes that the RA and ADA claims contained in the complaint cannot succeed and the complaint should be dismissed.

(2) <u>Background.</u> In December 2000, Student moved to Los Alamos, New Mexico, from Florida.  Tr. (12/10/2003) 763.  Student's father is a self-employed insurance adjuster who came to Los Alamos in connection with the work generated by the Cerro Grande fire.  Tr. (12/10/2003) 762-63.  Student first was enrolled in Cavalry Chapel Christian school in Los Alamos (2000-2001 school year--seventh grade).  Tr. (12/10/2003) 763; Pet. Ex. 2 at 8.  The next school year, Student chose to be home schooled (2001-2002 school year-eighth grade).  Tr. (12/10/2003) 764.  After home schooling, Student started ninth grade at Los Alamos High School ("LAHS"), Student's first public school enrollment (2002-2003 school year).  Parents did not request special education services at LAHS.  Tr. (12/10/2003) 802.  According to the father, he didn't know to ask for services, but he informed the school of the many problems Parents were having with Student, and asked the school to keep in close contact about absences or other problems.  Tr. (12/10/2003) 850.  Student was enrolled in LAHS for a very short time.  <u>See</u> Pet. Ex. 24 at 3 (school records indicate 23 days); Tr. (12/10/2003) 722 (during August and September 2002 according to Student).

Student left LAHS after Parents discovered that Student had (a) spent a weekend unsupervised, (b) taken the family car (Student lacked a driver's license) and a credit card, and (c) not attended school on the following Monday.  Tr.

(12/10/2003) 729-31, 769.  Student's parents turned to the juvenile justice system, resulting in Student's arrest followed by a court-ordered residential treatment program ("RTP") in Taos, New Mexico, on the recommendation of Student's juvenile probation officer.  Tr. (12/10/2003) 769, 772; Pet. Ex. 17 at 2.  Student was admitted to Casa de Corazon RTP in Taos in mid-November 2002 and evaluated for special education services by the Taos Municipal School District. Pet. Ex. 15 at 15-18; Tr. (12/10/2003) 774.  An initial individualized education program ("IEP") was prepared for Student with a course of study and a behavioral intervention plan.  Pet. Ex. 16.  The IEP Committee recommended that Student was eligible for special education services due to Student's emotional disturbances.  Pet. Ex. 16 at 3, 11.  The IEP Committee summarized its recommendation as follows:

> [Student] has a history of high risk behaviors accompanied by social problems, thought problems, impulsivity, and signs of depression that require residential treatment outside the home at this time, with educational services provided through a small, structured learning environment with reduced PTR and careful monitoring of [Student's] behavior.

Pet. Ex. 16 at 8.  The IEP recognized that Student's neighborhood school was LAHS, but rejected such placement as Student's "high risk behaviors and social functional issues require 24hr/day treatment outside of the home."  Pet. Ex. 16 at 5.

In mid-May 2003, Student applied to NMMI for the Fall 2003 semester.

-4-

Student was still residing at the RTP in Taos, and had diagnoses of bipolar disorder and oppositional defiance disorder ("ODD").  Doc. 1 at 3, ¶ 10; Doc. 6 at 2, ¶ 7.  Student's application materials disclosed that Student was in an RTP for ODD and currently taking lithium and seroquel.  Pet. Ex. 2 at 1, 6.  Student and Parents visited the NMMI campus in early June 2003 for an interview and required testing.  Pet. Ex. 11.  Student's father informed the admissions officer that the juvenile proceedings against Student were being dismissed as Student had satisfied the sentence requirements.  Tr. (12/10/2003) 841-42; Pet. Ex. 6 at 3; <u>see also</u>, Pet. Exs. 11, 17.  Student's father arranged for a conference call between an NMMI admissions representative and Student's therapist in support of the application.  Pet. Ex. 7; Tr. (12/10/2003) 835-37.  Student also wrote a letter on Student's own behalf.  Pet. Ex. 8.

On July 1, 2004, Student received notice that the application had been referred to the Admissions Committee for not meeting one or more of NMMI's admission requirements.  Pet. Ex. 9.  On July 14, 2003, NMMI rejected Student as ineligible for selection.  Pet. Ex. 12.  Student appealed to the NMMI Admissions Review Board, which upheld the rejection stating in pertinent part:

> The decision of the Board reflects the desire of New Mexico Military Institute to see that you can demonstrate an ability to succeed in an educational environment other than a Residential Treatment Facility. Your presence in the facility, your admitted past drug use and experimentation, and your present level of required medication and continued counseling, has resulted in a determination that NMMI is not presently the appropriate educational environment for you.

> After a successful semester in a public or other educational setting
> without evidence of the problems that resulted in your placement in
> the residential treatment facility, including no drug use, you may
> reapply for admission for the spring 2004 semester.

Pet. Ex. 14 at 1.

Student stayed at Casa de Corazon until the end of August 2003, and then

transferred to Desert Hills Behavioral Treatment Center in Albuquerque, where

Student attended a charter school, La Academia de Esperanza.  Pet. Exs. 25 at 21,

26 at 1-3; Tr. (12/10/2003) 779-80, 812, 818.  Student stayed there during

September and October 2003, and then returned to Parents' Los Alamos home and

home schooling.  Tr. (12/10/2003) 741, 812-13.  Subsequently, Student decided to

go off medications on her own.  Tr. (12/10/2003) 755, 783-85.  Student did not

want to enroll in LAHS pending an attempt to gain admission to NMMI because

Student thought it would be pointless to become involved in activities and

possibly have to leave.  Tr. (12/10/2003) 756.  Further, Student's father testified

that he rejected the idea of re-enrolling Student in LAHS for two reasons.  Tr.

(12/10/2003) 846.  First, after the time in the RTC, he thought it would be

disruptive to have Student in public school for a semester, rather than going right

to NMMI.  Tr. (12/10/2003) 846.  Second, given Student's past social

relationships in Los Alamos, he thought it would be a mistake to return Student to

LAHS.  Tr. (12/10/2003) 846-47.[3]

(3) <u>Due Process Proceedings and the Administrative Appeal.</u>  Plaintiffs

filed a request for due process with the New Mexico Public Education

Department[4] ("NMPED") contending that NMMI's refusal to admit Student

---

[3]  Student's father testified:

[Student] was making a concerted effort to change.  Los Alamos is
where [Student] got in trouble.  When we moved here, [Student] was
like, 12, 13 years old.  This is where [Student] began to get in serious
trouble.  This is where [Student] first started to try drugs and
everything else.

In the environment in Los Alamos, you know, . . . it's a small town,
everybody knew [Student].  So the half that [Student] used to hang
out with that [Student] shouldn't hang out with would be there.  And
quite frankly, you know, [Student] didn't hide [Student's] lifestyle.
So a lot of the kids that would be good peer choices I didn't think
would have anything to do with [Student] when [Student] came back,
you know.  And if [Student] wanted to come back there, fine.  But
[Student] was making the decision to try to change [Student's] life,
and I felt like it would be a mistake to bring [Student] to Los Alamos
High School and put [Student] there and say, ["]Yeah, sure, go to
school with all your old druggie friends that you used to hang out
with and do things with, and if in that environment, you can succeed,
maybe you'll make it at NMMI.["]  I thought it was a ludicrous
proposition and so did [Student's] therapist.

Tr. (12/10/2003) 846-47.

[4]  At the time, the public education department was the state department of
education.  A constitutional amendment resulted in a cabinet-level public
education department headed by a secretary of public education and a public
education commission.  N.M. Const. art. XII, § 6.  The statutory provisions
continue to refer to a state board of education.  <u>See</u>, <u>e.g.</u>, N.M. Stat. Ann. § 22-2-
1.

violated the IDEA and the RA.  In a letter to the parties, the NMPED noted "the crucial threshold question in this case appears to be whether NMMI owes any duties to [Student] under the IDEA or Section 504 [of the RA]."  R. at 140. NMMI contested jurisdiction, taking the position that the provisions of the IDEA, RA, and state special education standards relied upon by the Plaintiffs do not apply to NMMI.  R. at 146.  After briefing and an evidentiary hearing, the due process hearing officer ("DPHO") rejected these propositions in a memorandum opinion and order.  R. at 242-66.  She concluded that NMMI was a "public school or agency" within the meaning of the IDEA.  R. at 252.  Thereafter, another evidentiary hearing on the merits was convened and at the close the Plaintiffs' case, the DPHO made an oral ruling, granting judgment as a matter of law in favor of NMMI.  Tr. (12/10/2003) 955-56.  The DPHO found that Plaintiffs had not demonstrated that Student had met the standards of admission, been denied due process, or otherwise been discriminated against on the basis of disability. Tr. (12/10/2003) 956-58.

Both sides appealed to the Administrative Appeal Officer ("AAO").  NMMI appealed the jurisdictional decision, and Parents appealed the DPHO's grant of judgment in favor of NMMI as a matter of law.  R. at 6.  The AAO held that the DPHO should not have heard Parents' IDEA claim for lack of jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.  R. at 20.  "Having refused to accept Student into the NMMI program and absent a

referral to the NMMI program from either of Student's proffered [local education agencies ("LEAs")] [Los Alamos Public School or Taos Municipal Schools], Student's RTC or other public agency, there is no obligation upon NMMI to provide Student with [a] FAPE." R. at 12. Given the lack of a viable IDEA claim, the AAO dismissed the RA claim without prejudice. R. at 20.

(4) Standard of Review. The IDEA requires the court to consider the records of the administrative proceedings, hear additional evidence at a parties' request, and base its decision on the preponderance of the evidence, granting such relief as appropriate. 20 U.S.C. § 1415(i)(2)(B). Unlike summary judgment or a review of an administrative decision for substantial evidence, this court applies a modified de novo standard of review to the administrative proceedings below. L.B. ex rel. K.B. v. Nebo Sch. Dist., 379 F.3d 966, 973 (10th Cir. 2004); Murray v. Montrose County Sch. Dist. RE-1J, 51 F.3d 921, 927 (10th Cir. 1995). In this case, there are two decisions, one from the DPHO and one from the AAO. In such circumstances, due weight is to be given to the AAO's decision on issues which she disagreed with the DPHO, unless the DPHO's decision involved credibility decisions, which the record supports. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, 144 F.3d 692, 699 (10th Cir. 1998). Legal conclusions are reviewed de novo. Id.; Nebo Sch. Dist., 379 F.3d at 974. Although the AAO rejected many findings of fact made by the DPHO as unnecessary, R. at 9, the dispute in this case is primarily legal, resting upon

historical facts and the law.

The court agrees with the AAO that the DPHO had jurisdiction to consider the request for due process given that the IDEA provides for an impartial due process hearing "with respect to *any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education to such child." 20 U.S.C. §§ 1415(b)(6) (emphasis added), (f)(1); 34 C.F.R. § 300.507(a); N.M. Admin. Code tit. 6, § 31.2.13(I)(1). The New Mexico regulations allow for RA claims to be heard concurrently. Id. § 31.2.13(I)(1)(b). The claims in this case are not wholly insubstantial and frivolous, notwithstanding that this court has serious reservations about exhaustion; however, they do depend upon a construction of the IDEA that both this court and the AAO reject. Cf. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998); Hagans v. Lavine, 415 U.S. 528, 536-38 (1974).

(5) IDEA Overview. A major objective of the IDEA is to provide disabled children with "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d); 34 C.F.R. § 300.1; N.M. Admin. Code tit. 6, § 31.2.6. The Tenth Circuit recently provided an overview applicable to most cases:

> The IDEA provides federal grants to states, which the states then give to [LEAs] to assist in educating students with disabilities. Fowler v. Unified Sch. Dist. No. 259, 107 F.3d 797, 801 (10th

Cir.1997)[, vacated on other grounds by 521 U.S. 1115 (1997)].  The
IEP is the basic mechanism through which each child's individual
goals are achieved.  Murray, 51 F.3d at 925.  The IDEA contains
both procedural requirements to ensure the proper development of an
IEP, and substantive requirements designed to ensure that each child
receives a FAPE.  Id.  States must comply with the IDEA's
requirements, including providing each disabled child with a FAPE
in an LRE [least restrictive environment], in order to receive funds
under the statute.  20 U.S.C. § 1412(a)(1) and (a)(5).

Nebo Sch. Dist., 379 F.3d at 974; see also Bd. of Educ. of Hendrick Hudson Sch.

Dist. v. Rowley, 458 U.S. 176, 206-07 (1982).  The Parents' request for due

process alleged that NMMI, as a state-supported secondary school, was required

to provide Student a FAPE.  R. at 118-19; cf. Nebo Sch. Dist., 379 F.3d at 975

n.13 (school district failing to provide a FAPE violates IDEA's substantive

provisions).  Parents contended that (1) if NMMI accepted Student, NMMI would

be required to ensure a FAPE, and (2) Student was within the educational

jurisdiction of NMMI.  R. at 119.  Parents analogized NMMI to an LEA.  R. at

119; see also Tr. (12/10/2003) 951 (DPHO suggesting that NMMI is an LEA).

    (6) Definitions.  To understand this theory, it is necessary to consider a few

IDEA definitions.  A "free appropriate public education" means:

> special education and related services that--
> (A) have been provided at public expense, under public supervision
> and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or
> secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education
> program required under [20 U.S.C. § 1414(d)].

-11-

20 U.S.C. § 1401(9); 34 C.F.R. § 300.13; N.M. Admin. Code tit. 6,

§§ 31.2.7(B)(5), (C)(7).  An "individualized education program" is "a written

statement for each child with a disability that is developed, reviewed, and revised

in accordance with [20 U.S.C. § 1414(d)].  20 U.S.C. § 1401(14); 34 C.F.R.

§§ 300.15, 300.340(a).  It is prepared with input from the child's regular and

special education teachers and the child's parents, and reviewed at least annually

and revised as needed to ensure an appropriate education.  See Erickson v.

Albuquerque Pub. Schs., 199 F.3d 1116, 1118-19 (10th Cir. 1999).  It reflects the

child's abilities, special education goals, and the particular services the child will

receive in furtherance of those goals.  Id.

A "local educational agency"

means a public board of education or other public authority legally
constituted within a State for either administrative control or
direction of, or to perform a service function for, public elementary
schools or secondary schools in a city, county, township, school
district, or other political subdivision of a State, or for such
combination of school districts or counties as are recognized in a
State as an administrative agency for its public elementary schools or
secondary schools.

20 U.S.C. § 1401(19)(A); 34 C.F.R. § 300.18(a).  It may include "an educational

service agency" and "any other public institution or agency having administrative

control and direction of a public elementary school or secondary school," 20

U.S.C. § 1401(19)(B)(ii), "including a public charter school that is established as

an LEA under State law."  34 C.F.R. § 300.18(b)(2).  Educational service

-12-

agencies and other public institutions or agencies include "(i) an educational service agency; and (ii) any other public institution or agency having administrative control and direction of a public elementary school or secondary school." 20 U.S.C. § 1401(19)(B); 34 C.F.R. § 300.18(b). An "educational service agency" ("ESA") includes a "public institution or agency having administrative control and direction over a public elementary school or secondary school." 20 U.S.C. § 1401(5)(B); 34 C.F.R. § 300.10(b). A "public agency" is a catchall category that includes the state educational agency ("SEA"), LEAs, ESAs, and public charter schools not otherwise included as LEAs or ESAs (or their schools), as well as any other state political subdivisions "responsible for providing education to children with disabilities." 34 C.F.R. § 300.22.

(7) <u>The IDEA's Reach.</u>  When the State receives payments pursuant to the IDEA, the Act's regulations are binding upon "all political subdivisions of the State that are involved in the education of children with disabilities" including the SEA, LEAs, ESAs, public charter schools not otherwise included, other state agencies and schools, and state and local and adult correctional facilities. 34 C.F.R. § 300.2(b)(1). The IDEA regulations "[a]re binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving [IDEA] funds . . . ."

34 C.F.R. § 300.2(b)(2); <u>accord</u> N.M. Admin. Code tit. 6, § 31.2.2.[5]  The SEA has

overall responsibility for insuring the IDEA provisions are met and that "all

educational programs for children with disabilities in the State, including all such

programs administered by any other State agency or local agency" are under the

general supervision of, and meet the standards of, the SEA.  20 U.S.C.

§ 1412(a)(11); 34 C.F.R. § 300.600(a); <u>Bitsilly ex rel. Denet-Yazzie v. Bureau of</u>

<u>Indian Affairs</u>, 253 F. Supp. 2d. 1257, 1264 (D.N.M. 2003).  In circumstances

where a student is served by a public agency other than an LEA, the SEA is

ultimately responsible for ensuring a FAPE.[6]  34 C.F.R. pt. 300 app. A at 109 (Q

& A #15).

    (8) <u>NMMI's Characteristics.</u>  NMMI provides instruction for grades 9-12 in

addition to post-secondary education and is supported with a variety of public

funding sources.  R. at 245, ¶ 3; at 249-52, ¶¶ 31-55.  Plainly, NMMI is a

---

[5]  New Mexico's rules implementing the IDEA provide:

> The requirements of these rules are binding on each New Mexico
> public agency that has direct or delegated authority to provide special
> education and related services, regardless of whether that agency is
> receiving funds under the Individuals with Disabilities Education Act
> (IDEA) and regardless of whether it provides special education and
> related services directly, by contract or through other arrangements
> such as referrals by the agency to private schools or facilities.

N.M. Admin. Code tit. 6, § 31.2.2.

[6]  Plaintiffs did not name the SEA (public education department) in their
request for due process or in this complaint.

secondary school which is defined by the IDEA as "a nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12." 20 U.S.C. § 1401(27)[7].  NMMI is a state educational institution,[8] governed by a board of regents that is required to set admissions standards and charge tuition.  N.M. Const. art. XII, §§ 11 & 13; N.M. Stat. Ann. §§ 21-1-1(A), 21-1-2(A).  The board of regents are "to maintain and control, at Roswell, a military institute for the education and training of the youth of this country."  Id. § 21-12-3.  Until 1996, the state board of education acting through the state department of education exercised some accreditation oversight, but the statute was amended in 1996 to exclude NMMI.  N.M. Stat. Ann. §§ 22-2-5 (1996) (repealed 2004), 22-2-2(J) (1996) (amended 2004) (current version at § 22-2-2(D)); R. at 245-47, ¶¶ 5-11; Tr. (12/9/2003) 486-88.  NMMI operates rather autonomously from the state department of education.  R. at 247-

---

[7] NMMI provides a secondary education of a military nature.  R. at 245, ¶ 3.

[8] For purposes of New Mexico's Public School Code, N.M. Stat. Ann. § 22-1-1, NMMI is considered a state agency, a state institution, or a state educational institution.  Id. § 22-1-2(W) (state agency or state institution), (X) (state educational institution); N.M. Stat. Ann. § 22-2-2(J) (state institution); see also id. § 22-12-2(A) (compulsory school attendance law may be satisfied by attendance at "state institution").  Not being part of a school district or a charter school under state law, NMMI is not a public school under the Public School Code.  See id. § 22-1-2(L).  NMMI does not consider itself responsible for enforcement of the compulsory school attendance law.  R. at 249, ¶ 30.

48, ¶¶ 13-21.

(9) <u>New Mexico's Implementation of the IDEA.</u>   New Mexico

constitutionally provides for a "uniform system of free public schools."  N.M.

Const. art. XII, § 1.  A "free public school education" is provided through public

schools in school districts.  N.M. Stat. Ann. § 22-1-4(A), (C), (E).  N.M. Stat.

Ann. § 22-13-5 provides in pertinent part:

> School districts shall provide special education and related
> services appropriate to meet the needs of all children requiring
> special education and related services.  Regulations and standards
> shall be developed and established by the state board for the
> provision of special education in the schools and classes of the public
> school system in the state and in all institutions wholly or partly
> supported by the state.  The state board shall monitor and enforce the
> regulations and standards.

Thus, school districts are required to provide special education and related

services.  <u>N.M. Ass'n for Retarded Citizens v. New Mexico</u>, 678 F.2d 847, 854

(10th Cir. 1982).  The state board is also required to adopt regulations and

standards for the provision of such education in state-supported institutions.

N.M. Stat. Ann. § 22-13-5.[9]

New Mexico has legislatively mandated that the state board of education

participate in the IDEA.  <u>See</u> <u>id.</u> § 22-2-2(X) (requiring the state board to submit

---

[9]  Plaintiffs point out that New Mexico has a constitutional provision
requiring compulsory school attendance for "[e]very child of school age and of
sufficient physical and mental ability."  N.M. Const. art. XII, § 5.  No one has
claimed that the provision by negative inference deprives the student in this case
and it is unnecessary to consider its implications.

a plan for applying for funds under IDEA's predecessor and disburse the funds in accordance with the plan).  A 1984 Attorney General Opinion concluded that the state board of education had adequate authority to establish special education standards and enforce them for all public schools and institutions receiving public money, including NMMI, pursuant to N.M. Stat. Ann. §§ 22-13-5, 22-2-2(X). N.M. Op. Att'y Gen. No. 84-18 (1984).  The opinion concluded that such an exercise of power did not destroy the primary power of the board of regents to control and manage the institutions.  Id.  Regarding NMMI, the opinion relied upon "the limited special education services provided by [it] to handicapped children" to support its conclusion.  Id.  Of course, this opinion predates the 1996 amendment removing state board accreditation oversight of NMMI.  N.M. Stat. Ann. § 22-2-2(J) (amended 2004)(current version at § 22-2-2(D)).  Regardless, the opinion does not suggest what NMMI's responsibilities would be under such special education standards.

Pursuant to the state statutory command and consistent with its obligations as an SEA, 20 U.S.C. § 1412(11); 34 C.F.R. §§ 300.600(a)(1)-(2), the public education department has issued regulations implementing the IDEA.  N.M. Admin. Code tit. 6, ch. 31, pt. 2; see also Mo. Dep't of Elementary and Secondary Educ. v. Springfield R-12 Sch. Dist., 358 F.3d 992, 999-1000 (8th Cir. 2004) (discussing responsibilities of an SEA).  The department has carefully defined a "state-supported educational program" as one that "provides special education and

related services to children with disabilities who come within the program's educational jurisdiction." N.M. Admin. Code tit. 6, §§ 31.2.7(C)(16),[10] 31.2.9 (public agencies responsible for IDEA compliance for "children with disabilities who reside within the agency's educational jurisdiction").[11]   The department also has considered placements in or referrals to "a state-supported educational program or facility by another public agency." Id. § 31.2.11(J)(1)(a).   The regulations carefully condition such placement on an IEP team request, compliance with the IDEA, and do not require the state supported educational program to accept in every instance. Id. § 31.2.11(J)(1)(c); see also id.

---

[10]   The regulation provides:

A "state-supported educational program" means a publicly funded program that
(a) provides special education and related services to children with disabilities who come within the program's educational jurisdiction;
(b) is operated by, or under contractual arrangements for, a state school, state educational institution or other state institution, state hospital or state agency; and
(c) is primarily funded through direct legislative appropriations or other direct state support to a public agency other than a local school district.

N.M. Admin. Code tit. 6, § 31.2.7(C)(16).   NMMI is funded primarily from the Land Grant Permanent Fund.   R. at 251, ¶ 45.

[11]   The regulation defines "educational jurisdiction" of a public agency in pertinent part as including "the geographic area, age range and all facilities or programs within which the agency is obligated under state laws, rules or regulations or by enforceable agreements to provide educational services for children with disabilities." N.M. Admin. Code tit. 6, § 31.2.7(C)(6).

§ 31.2.11(J)(2) ("A state-supported educational program that accepts a child with a disability . . . without a referral or appropriate participation by the public agency that has primary responsibility for serving the child assumes all responsibility for [providing a] FAPE.").

(10) <u>Disposition.</u>  Although the reach of IDEA is expansive, it plainly contemplates that a public educational entity subject to its provisions be responsible or involved in providing education to children with disabilities.  <u>See</u> 20 U.S.C. §§ 1412(11)(A)(ii) (SEA responsibilities for "all educational programs for children with disabilities in the State, including all such programs *administered* by any other State agency or local agency") (emphasis added), 1413(a)(1)-(2) (LEA eligible for assistance *in providing* special education within its jurisdiction) (emphasis added); 34 C.F.R. §§ 300.2(b)(1) (applicability of IDEA regulations "to all political subdivisions of the State that are *involved* in the education of children with disabilities") (emphasis added), 300.22 (public agency must also be "responsible for providing education to children with disabilities."); N.M. Admin. Code tit. 6, §§ 31.2.9 (responsibility for IDEA compliance "applies to all New Mexico public agencies that are *responsible* under laws, rules, regulations or consensual arrangements for providing educational services for children with disabilities," regardless of whether agency receives IDEA funds or whether "it provides special education and related services directly, by contract by referrals to private schools or facilities or through other arrangements")

-19-

(emphasis added), 31.2.7(C)(16) (A "state-supported educational program" is

publicly funded and "*provides* special education and related services to children

with disabilities *who come within* the program's educational jurisdiction.")

(emphasis added).  The DPHO found that NMMI does not provide special

education programs, at least in accordance with the IDEA, and this finding is

supported by the record.  R. at 251, ¶ 44.  The DPHO reasoned that the above

language cannot let NMMI "off the hook" because "[s]chools cannot be permitted

to avoid the impact of the federal law simply by determining that they will not

provide services to children with disabilities."  R. at 259 n.4.

The matter is more nuanced.  NMMI's responsibilities must be viewed

against a backdrop of state law and the facts of this case.  The purpose of the

IDEA was not to displace the primacy of the States in education, but to assist

them in extending special education and related services to children with

disabilities.  Rowley, 458 U.S. at 207-08.  New Mexico has chosen to implement

its free and open public schools through school districts and public schools.  N.M.

Const. art. XII, § 1; N.M. Stat. Ann. §§ 22-1-4(A), (C).  NMMI is not part of a

school district, and is not considered a "public school" within the meaning of the

Public School Code.  See supra note 8; N.M. Stat. Ann. § 22-1-2(R) (defining

"school district" as "an area of land established as a political subdivision of the

state for the administration of public schools and segregated geographically for

taxation and bonding purposes"); Daddow v. Carlsbad Mun. Sch. Dist., 898 P.2d

-20-

1235, 1241-43 (N.M. 1995) (discussing characteristics of local school boards and distinguishing them from state educational institutions).  New Mexico also has arranged for school districts to provide special education.[12]  N.M. Stat. Ann. § 22-13-5.  From a functional approach, NMMI's purpose (providing military education and training) is different from a public school's purpose of implementing the uniform system of free public schools sufficient for the education of, and open to, all children of school age in the state.

It is uncontroverted that Student's LEA is Los Alamos Public School District or the Taos Municipal School District.  Student is not within NMMI's "educational jurisdiction."   N.M. Admin. Code tit. 6, §§ 31.2.7(C)(16).  Plaintiffs suggest that this case is analogous to a situation where a student receives special education in Albuquerque, moves to Las Cruces and is denied special education on the grounds that he could move back to Albuquerque.  Doc. 15 at 7.  The court disagrees.  The case is not about transferring from one public school district to another, with the new school providing a FAPE by adopting the former school's IEP or developing one of its own.  See 34 C.F.R. pt. 300 app. A at 109-10 (Q & A

---

[12]  The New Mexico School for the Visually Handicapped and the New Mexico School for the Deaf and also provide special education.  N.M. Stat. Ann. §§ 21-5-1, 21-6-2(A).  Even though these schools come within the reach of the IDEA, 34 C.F.R. § 300.2(b)(1)(iii), no one would suggest that non-visually impaired or non-deaf children with disabilities must be admitted to these institutions under the IDEA.

#17); N.M. Admin. Code tit. 6, § 31.2.11(H).  Nor is it a case where the LEA

makes a referral to another public or private entity in cooperation with the parents

to meet the special educational needs of the child.  Nor is it a case where parents

disagree with the LEA's IEP, notify the school district, and decide to place the

student in private school and seek reimbursement.  See Florence County Sch.

Dist. v. Carter, 510 U.S. 7, 12-13 (1993).

Instead, in the context of the IDEA, this is a case about Plaintiffs'

unilateral choice of a particular type of school, one that provides a military-based,

residential education.  No diagnostic or evaluation report, no recommendation

from an IEP team, nor any other evidence defined the nature of the special

education or related services that Student needs or the elements, scope or duration

of the program that should be designed post-RTC.  R. at 25.  Nor was there any

evidence making or recommending a referral to NMMI as appropriate to provide a

FAPE to address Student's needs.

A.  Exhaustion Concerns.  Though not raised by the parties, the court

always has been concerned about what appears to be a lack of exhaustion in this

case.[13]  The statute requires that Plaintiffs exhaust administrative measures for

available relief before filing a civil action.  20 U.S.C. § 1415(l).  In Padilla ex rel.

Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir. 2000), the Tenth

---

[13]  NMMI has denied that Plaintiffs have exhausted.  See Docs. 1 at 2, ¶ 3;
6 at 2, ¶ 4.

Circuit determined that "available relief" means a relief for the events, conditions or consequences complained of, not necessarily the relief preferred.  Plaintiffs always have alleged that Student is being denied a FAPE in the LRE.  Doc. 1 at 7, ¶ 40; R. at 119 ("This request for due process is properly brought against NMMI as a state-supported school responsible for provision of FAPE to an eligible student.").  While the particular relief sought by Plaintiffs is admission to NMMI, no showing has been made that the more pertinent relief (a FAPE pursuant to an IEP in a LRE) is not available through Student's public school district.  Nor has a showing been made that such relief is unavailable under the IDEA or it would be futile to make such an attempt.  See Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 n.6 (10th Cir. 2002).

In Cudjoe, the Tenth Circuit provided a comprehensive definition of exhaustion under the IDEA and after noting the statutory requirement, commented on the policy reasons for it.  Id. at 1063-68.  "[T]he policy supporting the exhaustion requirement also counsels that parents turn first to education professionals, as opposed to courts, to remedy disputes over a child's education." Id. at 1065.  That policy is not satisfied by the Plaintiffs' unilateral choice of NMMI as the provider of a FAPE–to the exclusion of the obvious provider in the first instance–Student's public school district of residence.  After all, the objective is a FAPE developed through an IEP in the LRE, not a particular school. See id. at 1066-67.

B.  IDEA Guarantees a FAPE, Not Unilateral Choice. Be that as it may, a unilateral choice of NMMI simply goes beyond the obligations imposed by the IDEA on the State in this case.  The Supreme Court and the Tenth Circuit have recognized that a FAPE is one that affords the child the opportunity to receive some educational benefit, not one that maximizes the child's potential.  As the Court stated in Rowley:

> Insofar as a State is required to provide a handicapped child with a "free appropriate public education," we hold that it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.  Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP.  In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

458 U.S. at 203-04.  Thus, the State is not required to provide an education that will maximize a child's potential "commensurate with the opportunity provided non-handicapped children."  Id. at 200.  Accord Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 727 (10th Cir. 1996) (student received an appropriate education though not within his school of choice); Murray, 51 F.3d at 930 (LRE mandate lacked a presumption of neighborhood schooling); Schuldt v. Mankato Indep. Sch. Dist. No. 77, 937 F.2d 1357, 1361-62 (8th Cir. 1991) (same); see also White ex rel. White v. Ascension Parish Sch. Bd., 343 F.3d 373, 378-79 (5th Cir.

-24-

2003) (IEP met the requirements of a FAPE even though not at neighborhood school).

Plaintiffs contend that IDEA cases holding that students may receive a FAPE at other placements than a neighborhood school are distinguishable because the neighborhood placement was sought for non-academic reasons and the students had alternatives.  Doc. 15 at 4-5.  According to Plaintiffs, Student has no like alternatives to NMMI and NMMI is not offering a second site location to Plaintiff.  This misses the mark.  As noted, Student has at least one unexhausted alternative in this case–the Los Alamos School District.  No requests were made for an updated IEP and there has been a decided lack of emphasis on the IEP (and its central role in securing a FAPE) in this case.  The reasons for rejecting that alternative were social and based upon personal preference.  See supra note 3 and accompanying text.  As discussed below, the court rejects the notion that the IDEA requires NMMI to offer a FAPE in the form of a military education to Student.

(11) Plaintiffs' Position.

Plaintiffs contend that the IDEA applies to NMMI in these circumstances because (A) NMMI students have rights under the IDEA, (B) proper statutory construction of IDEA includes NMMI, (C) the 1997 IDEA amendments on charter schools are dispositive, and (D) Supreme Court precedent supports the application of the IDEA to NMMI.  The court addresses these arguments in turn.

-25-

A.  Students' Rights Under the IDEA.  Plaintiffs fault the AAO for

grounding her analysis (concerning failure to state a claim) on the Parents'

request for due process before the SEA.  Doc. 13 at 7.  They contend that even

though the IDEA statute "does not specify the inclusion of NMMI," it does

specify who has the right of FAPE, specifically, a child with a disability.  Doc. 13

at 7.  Plaintiffs argue that designation as an LEA is not the only way a school

becomes subject to IDEA, and that the real issue is whether a prospective or

enrolled student at NMMI waives the IDEA guarantee of a FAPE.  Plaintiffs

contend that even a child in a private school has the right to receive a FAPE.

At the outset, it is important to note that the court does not pass on whether

NMMI must provide a FAPE for a child with a disability admitted to NMMI,

although the state department of education has answered in the negative.  R. at

182-86.  The court simply does not have these facts before it and will not render

an advisory opinion.  Having considered the IDEA statutes and regulations, as

well as the New Mexico implementing regulations, in these circumstances, the

court does not find a fit.  This is true, even given a broader focus than whether

NMMI is an LEA.

Turning to the analogy between private schools and NMMI, the IDEA does

provide for participation of parentally placed private school children where the

private school is in a school district served by an LEA.  20 U.S.C.

§ 1412(a)(10)(A)(i).  In those circumstances, amounts expended by the LEA must

be equal to a proportionate share of federal funds made available.

Id. §1412(a)(10)(i)(I).  However, the statute is clear the law "does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." Id. § 1412(a)(10)(C)(i); 34 C.F.R. § 300.403(a).  Where there are disagreements about the availability of a FAPE, the parents may invoke the due process procedures of the Act.  Id. § 300.403(b).  While the LEA has various consultation responsibilities, 20 U.S.C. §§ 1412(a)(10)(A)(i)(II), (ii)(II), (iii), (iv), (v), the court cannot agree that in circumstances like this (where the adequacy of the FAPE provided by the LEA has not been challenged) that parentally-placed children in private schools are entitled to a FAPE at the private school.  See 34 C.F.R. § 300.403(a).  And nothing in the IDEA suggests that private schools are required to waive admission standards to enable every child to attend.  The analogy of parental placement in a private school is not persuasive in these circumstances.

    B.  Statutory Construction of IDEA.  Plaintiffs argue that proper statutory construction of IDEA would include NMMI.  Relying upon Rowley, Plaintiffs argue that the result in this case ought to be consistent with Congressional intent to provide equal access to education.  458 U.S. at 188-200.  They then cobble

together various observations in the Congressional findings to suggest that the 1997 amendments to the IDEA moved it beyond the goal of "full equality of opportunity." 20 U.S.C. § 1400(c)(2) (1997) (amended 2004).  According to Plaintiffs, the focus of the IDEA now is on creating success for children with disability by "ensuring . . . access in the general curriculum to the maximum extent possible," coordinating educational improvement efforts "to ensure that such children benefit from such efforts and that special education can become a service for such children rather than a place where they are sent," providing appropriate special education services "in the regular classroom to such children, whenever appropriate," and supporting professional development of those who work with disabled children to enable those professionals "to meet . . . to the maximum extent possible, those challenging expectations that have been established for all children."  20 U.S.C. § 1400(c)(5)(A), (C), (D), (E)(i) (1997) (amended 2004).  These are observations on how education of children with disabilities may be made more effective, they simply do not support the theory that special education is merely a service that must be provided wherever the student chooses to attend school.

Plaintiffs' theory is that every state-supported school must provide special education because Congress attempted to describe every conceivable form of public schooling in the IDEA.  Doc. 13 at 10.  They maintain that the NMMI's lack of special education affects the admission procedures and screens out

students like the one before the court.  Id.  According to Plaintiffs, this is inconsistent with "full educational opportunity," 20 U.S.C. § 1412(a)(2), because the LRE requirement portends education in a regular classroom to the maximum extent possible.  Doc. 13 at 11.  Because the State provides an "alternate" regular education environment to Student's non-disabled peers (who seek a college-prep., military-based, residential education) Student is entitled to the same.  Id.

The court disagrees.  The language of the IDEA, its regulations, and Supreme Court decisions provide a better guide to its interpretation than a preordained conclusion that no school could possibly be omitted in these circumstances.  While it is undeniably true that the reach of the IDEA is not determined by whether a school is receiving IDEA funds, 34 C.F.R. § 300.2(b)(2); N.M. Admin. Code tit. 6, § 31.2.2, the Plaintiffs' argument focuses on a freestanding substantive guarantee without regard to the procedural mechanisms for implementing that guarantee.  Were that approach correct, much of the IDEA would be unnecessary because all school entities (public or private) would be required to make all their programs available to all potential students, without regard to suitability, qualifications or academic ability.  The Supreme Court has rejected incorporating additional substantive guarantees (such as strict equality in programming choice) onto the IDEA because Congress has not unambiguously communicated such obligations to the States, as it must do under the Spending Clause.  Rowley, 458 U.S. at 190 n.11; at 204 n.26.

Plaintiffs suggest that the policy reasons behind an Eleventh Amendment waiver analysis favor a broader interpretation of the IDEA given recent decisions concerning abrogation and waiver of such immunity.  Doc. 15 at 2-3.  They point to Tennessee v. Lane, 541 U.S. 509, ___, 124 S. Ct. 1978, 1989 (2004), and the suggestion by the Supreme Court that a valid abrogation of a state's Eleventh Amendment immunity pursuant to section five of the Fourteenth Amendment may be grounded upon disability discrimination in public education, at least when it comes to enforcing Title II of the ADA against a State.  They also point to recent decisions holding that in accepting IDEA funds, states waive Eleventh Amendment immunity.  See, e.g., M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 346 (3rd Cir. 2003); Bd. of Educ. v. Kelly E., 207 F.3d 931, 935 (7th Cir. 2000); Bradley v. Ark. Dep't of Educ., 189 F.3d 745, 750-52 (8th Cir. 1999), rev'd on other grounds sub nom., Jim C. v. United States, 235 F.3d 1079 (8th Cir. 2000) (en banc).  However, these decisions do not dilute the force of Rowley's premise that substantive obligations should be clearly communicated to the states, as the provisions concerning waiver of immunity would seem to do.  See 20 U.S.C. §§ 1403 (waiver of immunity), 1415(i)(2) (granting party aggrieved right to bring civil action in state or federal court).

Plaintiffs' argument, that NMMI's lack of IDEA special education services serves to screen out students with disabilities, implicates consideration of the admissions standards which are designed to ensure that students have a reasonable

-30-

chance of success for a military education and do not adversely affect other students.  Tr. (12/9/2003) 377-78, 397, 427-28; Resp. Ex. B at 4.  Such predictions are important because NMMI has a high attrition rate for new students–25% in 2002, with an average of 17-20% from 1995-2002.  Tr. (12/9/2003) 413-14.  All high school students at NMMI are required to be part of the Corps of Cadets and participate in Junior ROTC with such activities as close order drill, manual of arms, and living in a very close environment.  Tr. (12/9/2003) 379, 386, 425, 430.  Short-term disabling conditions (such as a sprained ankle or heat stroke) may be accommodated, but only where the student has met the admission requirements in the first instance.  Tr. (12/9/2003) 384-85, 422-24 (student must be "otherwise qualified").

The DPHO found that Student did not meet the NMMI admission standards.  Tr. (12/10/2003) 956.  The AAO found that NMMI denied Student admission.  R. at 11, ¶ 23; 20.  The NMMI Catalog has physical and behavioral standards for admissions.  Resp. Ex. B at 3-4 [2002-2004 Catalog at 37-38].[14]  NMMI's reasons

---

[14]  The catalog provides:

In addition to meeting reasonable standards of good health, applicants to the NMMI high school and junior college must demonstrate a pattern of good conduct, a willingness to accept responsibilities for their actions and a respect for others. . . . [Applicants] must have exhibited the capacity to adjust to and work effectively in a closely supervised, highly disciplined and occasionally stressful environment.

(continued...)

for Student's rejection– presence in a residential treatment facility, past drug use and experimentation, and need for ongoing medication and counseling–are but an application of its admissions standards.  The NMMI catalog lists the following disqualifying behavioral standards:

- Manic-depressive disorder, regularly scheduled psychological counseling or any other severe psychological disorders or limiting condition which in the opinion of the medical staff would interfere with the cadet's ability to function satisfactorily at the New Mexico Military Institute, demonstrated an inability to meet the existing NMMI academic requirements without significant accommodations that would alter the academic mission of the institute,
- A drug addiction[.]

Resp. Ex. B at 3 [2002-2004 Catalog at 38].  The catalog also provides that "Chronic or acute disabilities existing before or after matriculation are causes for dismissal."  Resp. Ex. B at 4 [2002-2004 Catalog at 39].

Applying these requirements, NMMI had justifiable concerns about Student's potential for success in the program based upon Student's past behavior.  Student admitted a drug addiction and seven months of treatment in a residential setting.  Tr. (12/8/2003) 231-32; Tr. (12/10/2003) 729, 741; Pet. Ex. 29 at 5.  Additionally, Student had been diagnosed with bipolar disorder and ODD, and was receiving regular medication.  Docs. 1 at 3, ¶ 10; 6 at 2, ¶ 7; see also Pet. Exs. 25 (initial psychiatric evaluation dated September 3, 2003,

_____

[14](...continued)
Resp. Ex. B. at 2-3 [2002-2004 Catalog at 37-38]..

recounting Student's history and status), 29 at 5-6; Tr. (12/8/2003) 232-33.  In the

residential treatment setting, Student received extensive therapy.  Tr.

(12/10/2003) 732-33; Pet. Ex. 29 at 5.  The NMMI medical staff was aware of

Student's general situation.  Pet. Ex. 31.  A physician consulted by the staff

requested additional information, but the admissions process apparently

concluded without consideration of that information.  Tr. (12/9/2003) 562, 566.

Be that as it may, the admissions staff had the input of Student's therapist at the

RTC, Pet. Exs. 5 at 2, 7, and no evidence suggests that further medical

information would have changed the outcome given the combination of factors

NMMI found troubling.[15]  Moreover, NMMI had valid concerns about drug

addiction for which no consultation would appear to be required.  As the

treatment notes confirm, see Resp. Ex. D, Student's behavioral problems had been

ongoing (chronic) and the questions raised about Student's ability to succeed in

the program were objectively reasonable.  Thus, Student's rejection was based

upon not meeting the admission standards, not the lack of special education at

---

[15]  The record indicates that NMMI has admitted students with ODD, depression and bipolar disorder, but the NMMI program was in no way modified for such students.  Tr. (12/9/2003) 628, 646-48.  An NMMI counselor testified that he had yet to see a cadet with ODD do well at NMMI because the cadet would have difficulty (1) with the chain of command and taking orders from persons of like-age or younger, and (2) classroom behavior, such as "acting out" is not tolerated.  Tr. (12/9/2003) 652-53.  The counselor also testified that "[d]iagnos[i]s is more an impression than it is a fact," and that he would want to evaluate the "physical exam, school records, [and] behavioral records."  Tr. (12/9/2003) 653-54.  That certainly was done in this case.

NMMI.

Plaintiffs' argument that full educational opportunity in the least restrictive environment means a regular education (or an alternative to a regular education like NMMI) is unavailing.  The LRE provision is to encourage "to the maximum extent appropriate" educating children with disabilities with children who are not disabled, in other words, not segregating disabled children.  20 U.S.C. § 1412(a)(5); Honig v. Doe, 484 U.S. 305, 311 (1988).  The Tenth Circuit rejected a similar theory of grafting additional substantive obligations onto a State based upon its LRE provision.  O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, 144 F.3d 692, 700-01 (10th Cir. 1998).  A LRE does not guarantee a disabled student any program of the student's unilateral choice, irrespective of admission standards.

C.  Charter School Amendments to IDEA.  Plaintiffs argue that the 1997 IDEA amendments including charter schools within the IDEA are dispositive. See 20 U.S.C. § 1413(a)(5) (1997) (amended 2004); 34 C.F.R. §§ 300.2(b)(1)(ii), 300.18(b)(2), 300.22, 300.190(b), 300.241, 300.312.  They point out that if a public charter school is not an LEA, or a school of an LEA, then the SEA must ensure IDEA compliance.  Id. § 300.312(b)-(d).  They suggest that the same should be true of NMMI, and that the state department of education's decision to appoint a DPHO in this case is indicative of its seeking to ensure NMMI's compliance with the IDEA.

-34-

In New Mexico, charter schools are free public schools that operate within school districts and are accountable in many respects to the local school board. N.M. Stat. Ann. § 22-8B-5(C).  Charter school students have rights under the IDEA and New Mexico law.  20 U.S.C. § 1413(a)(5); N.M. Stat. Ann. § 22-8B-4(A); N.M. Admin. Code tit. 6, § 31.2.11(I)(1) ("Children with disabilities who otherwise qualify for admission to a charter school may not be denied admission, services or benefits because of their disabilities or their needs for special education and related services.").  Yet charter schools may have enrollment procedures and preferences.  N.M. Stat. Ann. § 22-8B-4.1.  Merely because the SEA exercises ultimate authority over IDEA compliance for charter schools (and other schools) does not make NMMI subject to the IDEA.  The state department of education assigned a DPHO recognizing that an important issue existed as to whether NMMI owed the Student any duties under the IDEA or section 504 of the RA.  R. at 140.  The State has complied with its IDEA obligations in this matter.

D.  Supreme Court Cases.  Plaintiffs argue that various Supreme Court cases favor application of the IDEA to NMMI.  They rely upon Cedar Rapids Community School District v. Garrett F., 526 U.S. 66, 79 (1999), which held that the IDEA's definition of "related services" included nursing services to enable a student to attend school.  They further rely upon Supreme Court cases in other contexts vindicating the rights of mentally retarded and disabled persons as indicative of a trend of providing equal rights for persons with disabilities.  Doc.

13 at 16-18.  They suggest that "NMMI is an anachronism as it presently exists in its refusal to provide special education consistent with the IDEA" and its status as a publicly-funded high school is dispositive.  Id. at 18.  As previously explained, the court must resolve the case based upon the federal and state statutes and regulations, as opposed to the policy grounds urged by the Plaintiffs.

Plaintiffs also rely upon United States v. Virginia, where the Supreme Court held that Virginia Military Institute's exclusion of women from its educational opportunities violated equal protection, and a separate and unequal alternative was not an adequate remedy.  518 U.S. 515, 545-46, 554-56 (1996).  Plaintiffs suggest that just as gender-based generalizations could not be used to deprive women of the unique character of a military education, such generalizations cannot be used to deny students with disabilities a military-based education at NMMI.  Doc. 15 at 8.  The DPHO also relied upon United States v. Virginia, as well as the IDEA's aspiration of  "full educational opportunity" and access to non-academic and extracurricular services.  R. at 261-62 (citing 20 U.S.C. § 1412(a)(2) and 34 C.F.R. § 300.305).

In United States v. Virginia, the Court pointed out that the women on whose behalf a remedy was required were capable of performing all the individual activities required of male cadets and could meet the required physical standards.  518 U.S. at 550-51.  This case is concerned with non-gender related alteration of NMMI's admission standards.  NMMI contends and provided evidentiary support

that such course would lead to a fundamental alteration of the NMMI

program–replacing the single-track program in which all students participate to

one in which some will participate and some will not.  The court is not persuaded

that the goal of "full educational opportunity," in the context of the IDEA,

requires more than what the Supreme Court indicated in Rowley.

(12) Disposition of Plaintiffs' Non-IDEA Claims.  The parties disagree

about what should happen next if the court holds that Plaintiffs cannot prevail on

their IDEA claim against NMMI.  NMMI acknowledges that, as part of its policy

on equal opportunity, in compliance with federal law including the RA and the

ADA, it does not discriminate on the basis of disability in admissions standards.

Pet. Ex. 22 at 14.  Defendants urge that the RA and ADA claims must be

dismissed because they are derivative of the IDEA claim.  Doc. 14 at 20-22.

In Southeastern Community College v. Davis, 442 U.S. 397 (1979), the

Court considered whether section 504 of the RA precluded a professional school

from imposing admission requirements, specifically hearing ability.  The court

concluded that an "otherwise qualified person is one who is able to meet all of a

program's requirement in spite of his handicap."  Id. at 406.  The Court also

concluded that the professional school was not required to engage in affirmative

action and alter the program to allow the student to attend.  Id. at 409-12; see

also Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 152-53 (1st Cir. 1998)

(under the ADA, private college preparatory school was not required to transform

-37-

into special needs school and retain student with severe behavioral problems);

Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 795 (1st Cir. 1992) (under RA,

school was not required to substantially alter program requirements to

accommodate student with disability).

Relying on Davis, and the similarity between the substantive and

procedural frameworks of the IDEA and section 504, see 34 C.F.R. §§ 104.31-

104.39 (RA regulations similar to IDEA standards), the Tenth Circuit has held

that if a disabled child was not entitled to a neighborhood placement under the

IDEA, the same result was warranted under section 504 of the RA, and the ADA.

Urban, 89 F.3d at 727-28.  The court noted that a school district is not required to

modify its program to accommodate a single child in a neighborhood school,

particularly where the child is receiving educational benefits in another

environment.  Urban, 89 F.3d at 728.

Section 504 of the RA requires the same FAPE required by the IDEA.  See

Mo. Dep't of Educ., 358 F.3d at 998.  Although the court cannot say precisely

what educational benefits Student is receiving presently, at the time of Student's

application to NMMI, she was receiving educational benefits in another setting

without complaint.

Plaintiffs suggest that under 20 U.S.C. § 1415(l), the IDEA may not be

construed to restrict rights available under the RA or ADA and that the court has

jurisdiction over both claims.  See Padilla, 233 F.3d at 1272-73.  Plaintiffs also

contend that only the IDEA issues were contemplated by the court's entry of the stipulated order establishing a briefing schedule and that only IDEA issues were addressed in Plaintiffs brief-in-chief.  See Doc. 12 (stipulated briefing order). They further contend that the AAO dismissed the claim without reaching the merits.  See R. at 20.  Plaintiffs request a Fed. R. Civ. P. 16 conference and discovery on the remaining claims.

The court is not persuaded by Plaintiffs' arguments.  While it is true that the IDEA is not an exclusive remedy, Urban considered the procedural and substantive guarantees of the IDEA and ADA (through the lens of the RA) and determined that relief was not warranted under either.  Plaintiffs have not explained how the RA claim would differ from the IDEA claim or how it would provide for an independent basis of relief.  See R. at 41 ("NMMI overlooks that IDEA, not Section 504, is the primary vehicle for [Student's] challenge to . . . rejection by NMMI.").  The issue here is whether NMMI has a responsibility to provide Student with a FAPE (absent Student's admission) under the IDEA –if this claim fails, so does the RA claim.  N.L. ex rel. Mrs. C. v. Knox County Schs., 315 F.3d 688, 695-96 (6th Cir. 2003) ("In sum, precedent has firmly established that section 504 claims are dismissed when IDEA claims brought on the theory of a denial of free appropriate public education are also dismissed.").  Nothing precluded Plaintiffs from responding to Defendants' arguments concerning the proper disposition of the ADA and RA claims.  The fact that the AAO on legal

grounds declined to consider an RA claim in no way restricts this court from another legal resolution.  Finally, given the nature of the resolution, Plaintiffs have not indicated how discovery would assist.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that no relief shall be granted to the Plaintiffs on their IDEA claim, all claims are dismissed with prejudice, and judgment will be entered in favor of Defendants.

DATED this 7th day of February 2005, at Santa Fe, New Mexico.

*Paul Kelly J.*
United States Circuit Judge
Sitting by Designation

Counsel:
Gail Stewart, Steven Granberg Attorney at Law, P.A., Albuquerque, New Mexico, for Plaintiffs.

John F. Kennedy and Samantha J. Fenrow, Cuddy, Kennedy, Albetta & Ives, LLP, Santa Fe, New Mexico, and Steven L. Bell, Atwood, Malone, Turner & Sabin, P.A., Roswell, New Mexico, for Defendants.